# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 15, 2013          Decided April 5, 2013

No. 12-1284

MARC S. BARNES AND ANNE M. BARNES,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

On Appeal from the Decision
of the United States Tax Court

*Mario Vincent Dispenza Jr.* argued the cause for appellants. On the briefs was *Gerald W. Kelly Jr.*

*John A. Nolet*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Richard Farber*, Attorney.

Before: GARLAND, *Chief Judge*, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This case concerns Marc and Anne Barnes's joint income-tax return for fiscal year 2003. That year was a busy one for the Barneses, who at the time owned

or were involved with several different restaurant, nightclub, and event-promotion businesses. Relevant here, they held a partial ownership stake in an S corporation called "Whitney Restaurants," and they also ran an unincorporated event-promotion sole proprietorship.

The Barneses' 2003 tax return reported the income and withholdings for each of these businesses. The Internal Revenue Service disagreed with the Barneses' assessment of their tax liability in two primary respects. The first concerns a deduction the Barneses claimed for their $279,289 pro rata share of Whitney's 2003 losses. Taxpayers can deduct S-corporation losses only when they have sufficient "basis"—here, the amount of capital the taxpayer has contributed to the corporation minus the taxpayer's share of the corporation's previous losses—to absorb them. *See* 26 U.S.C. § 1366(d)(1). Because the IRS determined that the Barneses' remaining basis in Whitney was just $153,282.93, they were entitled to take a deduction for that amount only. Accordingly, the IRS disallowed the deduction claimed for the remainder ($123,006) of the Barneses' share of Whitney's losses.

The second point of contention between the Barneses and the IRS relates to the gross income of the Barneses' event-promotion sole proprietorship. Although the Barneses initially reported its income as $168,997, they subsequently alleged that they had overstated that amount by $30,000 because of a bookkeeping error. The IRS rejected this claim, declining to reduce the sole proprietorship's income as the Barneses had requested.

When all was said and done, the IRS determined that the Barneses' 2003 income taxes were deficient by $54,486. Finding that this deficiency constituted a "substantial understatement" of their income tax liability, *see id.*

§ 6662(d), the Service imposed a $10,897.20 accuracy-related penalty.

The Barneses challenged the IRS's deficiency finding, as well as the penalty, in the United States Tax Court. Reviewing the case on a fully stipulated record, the Tax Court upheld the Commissioner's determinations.

Appealing to this Court, *see id.* § 7482(a)(1) ("The United States Courts of Appeals . . . shall have exclusive jurisdiction to review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts . . . ."), the Barneses argue that the Tax Court misunderstood relevant law when it affirmed the IRS's calculation of their remaining basis in Whitney. They also challenge the factual basis for the Tax Court's decisions affirming the Service's rejection of their over-reporting claim and upholding its imposition of the penalty.

We review the Tax Court's legal conclusions de novo and its factual findings for clear error. *See Jombo v. Commissioner of Internal Revenue*, 398 F.3d 661, 663 (D.C. Cir. 2005). We would owe deference to the IRS's interpretation of the Internal Revenue Code under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), "*if* the Service had reached the interpretation[s] asserted here in a notice-and-comment rulemaking, a formal agency adjudication, or in some other procedure meeting the prerequisites for *Chevron* deference." *Landmark Legal Foundation v. IRS*, 267 F.3d 1132, 1135–36 (D.C. Cir. 2001) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229–34 (2001)). But because the IRS makes no claim to have done anything of the sort in evaluating the Barneses' return, we give its interpretations "no more than the weight derived from their 'power to persuade.'" *Id.* at 1136 (quoting *Mead*, 533 U.S. at 228, in

turn quoting *Skidmore v. Swift & Co.*, 323 U.S. 124, 140 (1944)).

The first of the Barneses' three challenges—their claim that IRS and the Tax Court calculated their basis in Whitney in reliance on an erroneous interpretation of the Internal Revenue Code—turns on a single question: Is a taxpayer's basis in an S corporation reduced by the amount of any suspended losses *in the first year* the basis is adequate to absorb those losses, regardless of whether the taxpayer claims a tax deduction for those losses in that year? The Barneses, who in 1997 failed to claim a deduction for a suspended loss even though they had adequate basis to absorb it, say "no: no deduction claimed, no basis reduction."

Unfortunately for the Barneses, the IRS and the Tax Court correctly concluded that the Internal Revenue Code says otherwise. Section 1367, which specifies the effects of various losses on a shareholder's basis, states that basis "shall be decreased for any period," 26 U.S.C. § 1367(a)(2)(B) (cross-referencing *id.* § 1366(a)(1)(A)), by "the shareholder's pro rata share of the corporation's . . . items of . . . loss." *Id.* § 1366(a)(1)(A). Section 1366 provides that any S-corporation losses a shareholder lacks sufficient basis to absorb "shall be treated as incurred by the corporation in the succeeding taxable year." *Id.* § 1366(d)(2)(A) (cross-referencing *id.* § 1366(d)(1)). Taken together, these two provisions are clear: A shareholder's basis is decreased "for any period" by the amount of that shareholder's pro rata share of the corporation's losses, and a shareholder incurs previously unabsorbed losses in the first year the shareholder has adequate basis to do so.

Nothing in any of these provisions suggests that a shareholder's basis is not reduced if the shareholder fails to

take a deduction for the corporation's losses. Indeed, the fact that the Code explicitly provides that a shareholder's basis is increased by corporate *income* "only to the extent such amount is included in the shareholder's gross income on his return," *id.* § 1367(b)(1), but provides no similar exception for corporate *losses*, militates against the Barneses' preferred reading. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)). This difference makes sense. Although Congress had every reason to prevent taxpayers from reaping a double benefit by failing to report income while still being credited with an increased basis, it had no reason to permit them to indefinitely delay the realization of losses.

True, this means that the Barneses paid more in taxes than they owed. But so it goes. They could have avoided this problem by claiming a deduction for the loss in 1997 or by amending their 1997 return during the applicable limitations period thereafter. Because they failed to do either, neither a contorted reading of the applicable statutes nor the so-called tax benefit rule—which the Barneses invoke but which is simply inapplicable here, *see Hillsboro National Bank v. Commissioner of Internal Revenue*, 460 U.S. 370, 377–86 (1983)—can turn back the clock.

The Barneses' next claim relates to their alleged $30,000 over-reporting of the sole proprietorship's income. In support of their claim, they provided evidence showing that only $30,000 of a certain $60,000 check was paid to the sole proprietorship. As the Tax Court emphasized, however, they provided no evidence that they actually reported the excess

$30,000 as part of the sole proprietorship's income in the first place. Given this, the Tax Court made no clear error when it upheld the IRS's determination not to reduce the sole proprietorship's income. On this issue, the Barneses also argue that the IRS acted inconsistently by rejecting their claim of over-reported income while accepting their claim of over-reported expenses. But because they failed to make this argument before the Tax Court, *see* Oral Arg. Rec. 12:33–13:30 (conceding this point), we consider it forfeited. *See Marymount Hospital, Inc. v. Shalala*, 19 F.3d 658, 663 (D.C. Cir. 1994) ("[A]bsent 'exceptional circumstances' . . . 'it is not our practice to entertain issues first raised on appeal.'" (quoting *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 & n.5 (D.C. Cir. 1992)); *see also Valdez v. Commissioner of Internal Revenue*, 110 F.3d 72 (9th Cir. 1997) (applying this rule to appeals from Tax Court decisions).

Finally, given our resolution of the two previous issues, there is no dispute that the Barneses' 2003 tax return understated their taxes by an amount that qualifies as "substantial." *See* 26 U.S.C. § 6662(d)(1)(A). The Barneses nonetheless argue that the IRS and the Tax Court should have excused their understatement on "substantial authority" or "reasonable cause and good faith" grounds. *See id.* §§ 6662(d)(2)(B)(i), 6664(c)(1). But taxpayers bear the burden of proof on this question, *see Higbee v. Commissioner of Internal Revenue*, 116 T.C. 438, 447 (2001), and the Tax Court committed no error when it determined that the Barneses failed to submit the evidence necessary to carry that burden.

For the foregoing reasons, we affirm.

*So ordered.*